

Your Missouri Courts

Case.net

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print

GrantedPublicAccess Logoff BRYAN_WISE

## 2211-CC00662 - JAMIE LEONARD V KRISTIAN SCOTT (E-CASE)

Case Header | FV File Viewer | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

Click here to eFile on Case

Click here to Respond to Selected Documents

Sort Date Entries: Descending Ascending

Display Options: All Entries

**07/19/2022** **Summons Issued-Circuit**

Document ID: 22-SMCC-1370, for SCOTT, KRISTIAN. SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. EPH

**07/18/2022** **Filing Info Sheet eFiling**

**Filed By:** THOMAS RICHARD APPLEWHITE

**Pet Filed in Circuit Ct**

Petition for Damages.

**Filed By:** THOMAS RICHARD APPLEWHITE

**On Behalf Of:** JAMIE LEONARD

**Judge Assigned**

Exhibit A

**2211-CC00662**

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. CHARLES
## STATE OF MISSOURI

| | | |
|---|---|---|
| **JAMIE LEONARD**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | Division No. |
| **KRISTIAN SCOTT,** | ) | |
| | ) | |
| Defendant. | ) | |

### PETITION FOR DAMAGES

**COMES NOW** plaintiff Jamie Leonard (hereinafter referred to as "Plaintiff"), by and through his attorneys, and for his cause of action against defendant Kristian Scott (hereinafter referred to as "Defendant"), states as follows:

### Jurisdiction and Venue

1. Plaintiff Jamie Leonard brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 for violation of his Fourth Amendment, Eighth Amendment and Fourteenth Amendment rights.

2. This Court has jurisdiction and venue over all factual and legal matters relevant to this cause of action. Jurisdiction and venue are proper in the County of Saint Charles, Missouri, pursuant to MO. REV. STAT. § 508.010.4 because the County of Saint Charles, Missouri is the county where Plaintiff was first injured by the wrongful acts alleged in this action.

### Parties

3. Plaintiff is, and at all times stated herein was, an individual person, resident, and citizen of the State of Missouri over the age of 18 years.

4. Defendant was a suicide prevention officer with the St. Charles Department of Corrections (hereinafter, the "St. Charles DOC") at the time of the events described herein. Defendant is sued in his individual capacity.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

## Statement of Claim

5.      On July 19, 2017, Plaintiff experienced a psychotic hallucination episode.

6.      Plaintiff traveled to Wentzville, Missouri on or around 10:00 am that day, where he had an encounter with the Wentzville Police Department (hereinafter referred to as "Wentzville").

7.      On July 19, 2017, Plaintiff was taken into custody by Wentzville.

8.      Plaintiff was fully compliant and followed all instructions given to him by law enforcement as they took him into custody.

9.      Plaintiff's mother, Michelle Manoli (hereinafter referred to as "Michelle"), became concerned for Plaintiff's safety and whereabouts and started to search for Plaintiff. Michelle discovered that Plaintiff had been taken into police custody.

10.     Michelle explained to a Wentzville police officer that Plaintiff had a medical history of psychotic episodes and that Plaintiff's medical provider had stated to her that Plaintiff needed to be admitted to that medical provider's care for a psychological evaluation before his arrest.

11.     The officer replied to Michelle that Plaintiff was deemed fit for confinement.

12.     Michelle protested Wentzville's determination and informed them that Plaintiff was seeing a retinal specialist for his left eye as he had Reiter's disease as well as an eye infection, iritis/uveitis, which required daily use of eye medication.

13.     Michelle made pleas to several other Wentzville officers to have her son reevaluated or at the very least separated from others to reduce the risk of injury.

14.     Wentzville refused all requests, despite at least one of its officers acknowledging Plaintiff's behavior as abnormal since that officer had known Plaintiff previously.

- 2 -

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

15.     Indeed, the hospital to which Plaintiff was taken to determine if he was fit for confinement, SSM Health St. Joseph Hospital in Wentzville, Missouri, reported through Matthew P. Hoffman, RN, the morning of July 19, 2017 as to Plaintiff: "Asked if hears voices and laughs and states "Yeah. Lots of fuckin voices, haha." awaits Cl evaluation. Police states pt is fit for confinement."

16.     As a result of the foregoing, Wentzville was made aware of Plaintiff's mental issues and eye issues.

17.     Wentzville transferred Plaintiff into the custody of the St. Charles DOC at least as early as 10:45 pm on July 19, 2017 but no later than July 20, 2017.

18.     On July 20, 2017, Plaintiff was booked into the St. Charles DOC at 12:29 PM, and the St. Charles DOC's "Records of Arrest" form clearly indicated Plaintiff had "mental health concerns" and/or was a "suicide risk."

19.     Plaintiff immediately began manifesting mental symptoms to the St. Charles DOC as soon as he was booked.

20.     Plaintiff's mental symptoms at the time included acute psychosis, which worsened during his time at the St. Charles DOC.

21.     Acute untreated psychosis is a serious medical condition.

22.     At 1:05 am on July 22, 2017, Plaintiff attempted to choke himself by putting his hand down his throat due to his psychosis, at which point the medical staff employed by the St. Charles DOC (*the medical staff at the St. Charles DOC*, hereinafter, "Medical") was notified, and Theresa Martin (hereinafter, "Martin"), a nurse, responded.

23.     Martin observed that Plaintiff was blowing his nose so hard that it was causing his nose to bleed.

- 3 -

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

24.     Furthermore, Plaintiff was yelling.

25.     When Martin asked Plaintiff why he was behaving this way, Plaintiff stated: "I have to get my soul out because it is time for me to die."

26.     He further gave incredibly bizarre explanations, carried on with self-harming physical actions and stated, "This is what I am supposed to do."

27.     Plaintiff told Martin that he "loved life and had everything to live for" but he was "supposed to die."

28.     Martin noted that Plaintiff did not appear to be entirely alert and oriented times three, was wide eyed, looked confused, and could not remember directions that were given 30 seconds earlier.

29.     The St. Charles DOC's medical supervisor was made aware of the foregoing by Defendant Martin.

30.     Defendant Martin reported that Plaintiff made "suicidal statements" and would be on "close observation until cleared by mental health and medical supervisor."

31.     Plaintiff was transferred to the St. Charles DOC's suicide prevention unit in the very early morning hours of Saturday, July 22, 2017.

32.     A shift change occurred in which suicide prevention officer Donte Fisher (hereinafter, "Fisher") transferred his suicide prevention officer duties over Plaintiff to Defendant.

33.     During the shift change, Fisher informed Defendant that Plaintiff was received to the unit and had continued to display erratic behavior by standing on his bunk nude, repeatedly flushing the toilet, shouting and banging his head on the door and walls.

34.     On July 20, 2017, Michelle contacted Medical to convey that Plaintiff had Reiter's syndrome.

- 4 -

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

35.     While conveying that Plaintiff had Reiter's syndrome, which is also known as Reiter's disease, Michelle also explained to Medical that Plaintiff had mental health issues.

36.     At that time, Michelle conveyed to Medical that Plaintiff was prescribed multiple medications, which could be found by contacting Schnuck's Pharmacy.

37.     Michelle also conveyed to Medical why Plaintiff was on his various medications and that Plaintiff was treated by Dr. Linda Hunt through SSM St. Luke's.

38.     Michelle provided Medical with the phone number for Schnuck's Pharmacy.

39.     At that time, Medical instructed Michelle to bring Plaintiff's medication to the St. Charles DOC so that the medication could be reviewed by Medical.

40.     Also, at that time, Medical noted that Plaintiff was "confused about current medical conditions[.]"

41.     Schnuck's Pharmacy had the following prescriptions on file for Plaintiff: prednisolone acetate 1% eye drops (filled on 6/23/17); citalopram (filled on 6/27/17); Durezol 0.05% eye drops (filled 7/5/17); and Simponi (filled on 7/8/17).

42.     Plaintiff's ophthalmologist, Dr. Kumar Rao, had prescribed prednisolone acetate 1% eye drops (filled on 6/23/17); citalopram (filled on 6/27/17); Durezol 0.05% eye drops (filled 7/5/17); and Simponi (filled on 7/8/17) less than a month prior as a treatment for an active flare of uveitis in Jamie's left eye that resulted from Plaintiff's Reiter's disease.

43.     Dr. Rao had prescribed the stronger steroid eye drops, Durezol, because Plaintiff's uveitis had failed to respond adequately to prednisolone alone.

44.     Later that day on July 21, 2017, Michelle also delivered medication for her son to department employees.

45.     The medication delivered by Michelle included Plaintiff's eye medication.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

46.     The St. Charles DOC accepted such medication from Michelle for Plaintiff's eye condition before any pepper spray was used on Plaintiff.

47.     Defendant did not attempt to cause any eye medication to be administered to Plaintiff when he was in the St. Charles DOC's custody in July 2017.

48.     Defendant did not attempt to cause any psychiatric medication to be administered to Plaintiff in July 2017.

49.     A suicide prevention officer should speak to a department of corrections' medical staff before a use of force in any occasion where there is a planned use of force.

50.     If a St. Charles DOC suicide prevention officer has enough time to reach out to Medical prior to a use of force, it is a planned use of force.

51.     Additionally, a planned use of force is when there is not an emergent situation, but there is enough time to plan an approach to an inmate prior to using force.

52.     When an inmate and that inmate's cell are searched during a shift change, that is a planned inspection.

53.     A planned inspection of an inmate's cell is a planned use of force.

54.     The use of Oleorsin Capsicum, also known as "O.C. spray" or "pepper spray", is a use of force.

55.     Pepper spray, a chemical agent and aerosol weapon, was issued to Steven Harris (hereinafter, "Harris") by the St. Charles DOC on July 22, 2017.

56.     The use of pepper spray by a St. Charles DOC officer against an inmate is a use of force.

57.     On July 22, 2017, Harris sprayed Plaintiff in the face with pepper spray.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

58.     Plaintiff was in the suicide prevention unit when he was pepper sprayed in the face by Harris.

59.     Plaintiff was handcuffed when he was pepper sprayed in the face by Harris.

60.     It is recognized in the corrections field throughout the country that pepper spray should be not used on handcuffed individuals.

61.     Harris pepper sprayed Plaintiff during a routine cell search that was required to be performed at every shift change in the suicide prevention unit.

62.     This routine cell search was not necessary in the suicide prevention unit.

63.     Fisher's shift was ending when the aforementioned search of Plaintiff's cell was performed on July 22, 2017.

64.     Fisher waited until he had two additional officers to perform the search of Plaintiff's cell because of Plaintiff's disturbing behavior at the time.

65.     Fisher, Harris and Defendant had a meeting prior to entering the cell to discuss how to best approach the search of Plaintiff's cell.

66.     Prior to performing the search of Plaintiff's cell and in front of Defendant, Fisher instructed Harris to have his pepper spray unholstered, in his hand and ready to use on Plaintiff if the need arose.

67.     Because this was a routine cell search with sufficient time to meet in advance of the actual cell search and discuss the use of pepper spray, the search of Plaintiff's cell in the suicide prevention at approximately 6:40 am on July 22, 2017 involved a planned use of force.

68.     The planned search of Plaintiff's cell was not an emergency.

69.     Defendant did not consult Medical prior to the planned search, which was less than 100 feet away from Plaintiff's cell in the suicide prevention unit.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

70.   Defendant did not call Medical in order to have an immediate answer as to whether it was appropriate to use pepper spray on Plaintiff.

71.   It would have taken less than one minute for Defendant to have learned about Plaintiff's eye condition and his mental health issues had he not already known about them.

72.   Martin would not have allowed the use of pepper spray on Plaintiff had she been consulted about the use of pepper spray on Plaintiff.

73.   Informational documents provided to St. Charles DOC's employees at the time stated that the following may result from the use of O.C. spray for approximately 30-45 minutes:

(a)   a painful burning sensation in the eyes, involuntary eye closure, profound tearing, visual impairment, and protracted redness; and

(b)   psychological effects, such as fear, anxiety and possible panic.

[The above subsections (a) and (b) are hereinafter referred to as the "Described Effects of Pepper Spray".]

74.   St. Charles DOC's policies and procedures governing the use of O.C. spray at the time included but were limited to:

(a)   "If the situation allows, the on-duty shift supervisor will contact medical to see if the inmate has a respiratory or heart condition that could be affected by the chemical agent or if the inmate is allergic to pepper. In those cases, O.C. Spray will not be used."

(b)   The officers should "determine if serious medical condition requiring emergency services exist:" such as such as if the subject is (i) "under the influence of alcohol or drugs," (ii) "if the subject requests medical attention" or (iii) "if the subject loses consciousness."

- 8 -

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

(c)     Tactical withdrawal or disengagement possibilities are supposed to be considered.

(d)     Per the policy documents, people who have bizarre behavior episodes and/or risk of drugs are even at risk of death after using O.C. spray.

(e)     The spray should not be deployed at distances of less than three feet to avoid the "hydraulic needle effect." The hydraulic needle effect is when close-range spray causes more serious eye irritation by attacking the cornea with a concentrated stream of liquid.

(f)     After use, the subject is supposed to be monitored for at least two hours.

(g)     If an inmate is found to harm himself, the inmate's status needs to be increased to actively suicidal, requiring constant observation and possibly restraint.

[The above subsections (a) through (g) are hereinafter referred to as the "Policies".]

75.     Defendant knew or should have known that Plaintiff was very mentally unwell at the time of the cell search.

76.     Fisher, Harris and Defendant entered Plaintiff's cell at approximately 6:40 am in the suicide prevention unit to perform the aforementioned search of Plaintiff's cell.

77.     During the cell search, Plaintiff did not stay on his knees as directed, and he proceeded to walk. Harris believed Plaintiff was not walking towards the officers, but around them.

78.     Harris pepper sprayed Plaintiff in the face.

79.     Before and when Harris sprayed Plaintiff, Plaintiff had Reiter's Syndrome in his left eye and had developed uveitis/iritis as a result of his Reiter's Syndrome.

80.     The St. Charles DOC knew of Plaintiff's Reiter's Syndrome and his uveitis/iritis in his left eye before and when Harris sprayed Plaintiff.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

81.     Before and when Harris sprayed Plaintiff, the St. Charles DOC also knew of Plaintiff's eye condition through multiple phone calls and an in-person visit by Michelle.

82.     Michelle advised of Plaintiff's eye condition and requested that the St. Charles DOC administer his prescribed medication therefor.

83.     Before and when defendant Harris sprayed Plaintiff, Medical knew that Plaintiff was diagnosed with a mental condition and was behaving psychotically.

84.     As the video footage that was preserved by the St. Charles DOC shows, Harris discharged his pepper spray into Plaintiff's eyes at a distance of one foot to one and a half feet from Plaintiff's eyes.

85.     As the video footage that was preserved by the St. Charles DOC shows, Plaintiff fell to the ground after the pepper spray was administered.

86.     Fisher, Harris and Defendant then completed their inspection of Plaintiff's cell.

87.     No contraband was ever discovered in Plaintiff's cell despite multiple subsequent cell searches.

88.     When C.O. Baethke (DSN 435) arrived, he encountered a pungent smell of O.C. Spray as well as officers inspecting Plaintiff's cell.

89.     After inspecting Plaintiff's cell, on-shift supervisor Lisa Baker (hereinafter, "Baker") directed the transferring of Plaintiff to a new cell.

90.     After Plaintiff was pepper sprayed and subsequently transferred to his new cell in the suicide prevention unit, no restraints were used on Plaintiff prior to Plaintiff's self-harm event.

91.     Medical kept a sedative, Haldol, in stock.

92.     Plaintiff was not provided Haldol and/or appropriate psychiatric medications prior to Plaintiff's self-harm of his eye.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

93.     As a result of not being sedated and/or provided appropriate psychiatric medications, Plaintiff became increasingly psychotic.

94.     On-duty nurse Martin then inspected Plaintiff and directed the washing out of Plaintiff's eyes with water.

95.     Defendant did not attempt to have Plaintiff restrained after the pepper spraying despite being the on-duty suicide prevention officer.

96.     Defendant did not ensure that Plaintiff had anything other than a sink, water and minimal instructions to wash out his eyes.

97.     Even that minimal care of having a sink, water and minimal instructions for Plaintiff to wash out his eyes was provided by Harris, not Defendant.

98.     The task of assisting Plaintiff with washing the pepper spray out of his eyes was highly important.

99.     This highly important task of assisting Plaintiff with washing the pepper spray out of his eyes was especially important given Plaintiff's psychotic state and unpredictable behavior.

100.    Harris left one minute after Plaintiff started rinsing out his eyes.

101.    Defendant did not bring Plaintiff to Medical where there was an actual eyewash station.

102.    Defendant instead left Plaintiff alone in his new cell unrestrained, without sedation and without any psychiatric medications.

103.    Plaintiff began yelling loudly in his cell.

104.    Because of the fully expected shift change that triggered the search, roll call was being conducted for the day shift.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

105.    Left alone in his new cell, Plaintiff's eye and mental state continually worsened for approximately 40 minutes.

106.    During those approximately 40 minutes, the Described Effects of Pepper Spray were taking effect.

107.    While alone in his new cell, Plaintiff's eye worsened to the point that Plaintiff, in great pain and with a worsening mental state, started to claw at his infected left eye.

108.    Defendant did nothing to stop Plaintiff from clawing at his left eye despite being a suicide prevention officer in charge of monitoring Plaintiff.

109.    Baker would later state that the pepper spray "did its job" on Plaintiff.

110.    Baker would later state that Plaintiff was clawing at his eye because of the pepper spray.

111.    Plaintiff was clawing at his left eye because of the pepper spray, his eye condition, and his psychosis.

112.    As the Described Effects of Pepper Spray took effect, when combined with Plaintiff's psychosis and his aforementioned eye conditions, Plaintiff's mental state worsened as did his left eye.

113.    At this point, Plaintiff was still alone in his new cell unrestrained, without sedation and without any psychiatric medications.

114.    If an inmate is found to harm himself, the inmate's status needs to be increased to actively suicidal, requiring constant observation and possibly restraint.

115.    Defendant stood outside Plaintiff's cell and watched Plaintiff claw out his eye.

116.    Plaintiff removed his eye from his socket over the course of four to five minutes.

- 12 -

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

117.    Per William S. Forness, RN, from SSM Health St. Joseph Hospital in St. Charles, Missouri, later that morning:

> "According to CO's that are with him he was banging his head on the floor and the bars of the jail and trying to pull out his left eye, he had been prying at his eye. Until they noticed that it was bleeding and they realized that it was partially removed from the socket and they sent him here."

118.    Defendant finally entered Plaintiff's cell after Plaintiff had already clawed at his eye for a prolonged period of time.

119.    Regardless of the reason, failing to stop Plaintiff from gouging out his own eye in a suicide prevention unit was an egregious failure to intervene in a medical and/or physical crisis.

120.    To stand outside of an inmate's cell in the suicide prevention unit while that inmate actively harms himself is analogous to watching an inmate hang himself and then choosing to intervene only after the inmate has successfully hanged himself.

121.    Upon entering Plaintiff's cell, Plaintiff was subdued, restrained and outside emergency medical services were contacted.

122.    Upon arrival at the scene, the outside emergency medical services successfully sedated Plaintiff.

123.    Plaintiff was sedated with Haldol injections.

124.    Plaintiff was then transported to SSM Health St. Joseph Hospital in St. Charles, Missouri that same day.

125.    SSM Health St. Joseph Hospital in St. Charles, Missouri was unable to provide the needed care for Plaintiff.

126.    Plaintiff was then transported to Saint Louis University Hospital that same day.

- 13 -

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

127.    The same day after the aforementioned eye loss took place, a St. Charles DOC employee returned Plaintiff to the St. Charles DOC.

128.    Michelle learned that Plaintiff lost his eye hours after it occurred on July 22, 2017.

129.    Defendant's failures described above, including violations of the Policies, allowed Plaintiff to permanently lose his left eye.

130.    Plaintiff's left eye was irreparably damaged on July 22, 2017.

131.    Plaintiff's left eye had to be surgically removed as a result of that damage.

132.    Plaintiff suffering the self-harm event to his left eye was caused by one or more of the following failures:

(a)    Defendant failed to obtain an emergent psychiatric consultation despite Plaintiff's psychosis and risk of self-harm.

(b)    Defendant failed to take action even though a serious medical condition requiring medical attention existed, such as (i) being under the influence of drugs, (ii) Plaintiff's family seeking medical attention for Plaintiff's mental state and eye condition, and/or (iii) Plaintiff losing consciousness after the use of pepper spray.

(c)    Defendant did not consider tactical withdrawal or disengagement possibilities instead of proceeding with a cell check in the first place.

(d)    Defendant had multiple other non-lethal alternatives that could have been used to safely keep Plaintiff in his cell during the aforementioned cell search wherein Plaintiff was pepper sprayed in the face.

(e)    Defendant failed to consult Medical personnel prior to planning a possible use of pepper spray during a routine, planned cell search.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

(f)      Defendant failed to provide appropriate aftercare to Plaintiff after he was subdued by the pepper spray.

(g)      Defendant failed to place restraints upon Plaintiff after he was subdued by the pepper spray.

(h)      Defendant failed to consider the risk of physical harm and self-harm to Plaintiff given his mental state and his eye condition prior to allowing O.C. spray to be deployed instead of having a medical professional use a sedative.

(i)      Defendant failed to correctly identify Plaintiff's mental state.

(j)      Defendant allowed pepper spray to be used at a distance of much less than three feet, harming Plaintiff further.

(k)      Defendant allowed Plaintiff to be pepper sprayed while he was handcuffed.

(l)      Defendant, a suicide prevention officer, failed to keep Plaintiff under appropriate supervision on a suicide prevention unit.

(m)      No action was taken by Defendant to prevent Plaintiff from removing his eye.

[The above subsections (a) through (m) are heretofore and are hereinafter referred to as the "Failures".]

## COUNT 1:
## Violations of Plaintiff's Fourth and Fourteenth Amendment Rights
## Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 1 against Defendant:

133.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

134.    On or about July 21, 2017 and July 22, 2017, Defendant, under color of state law as a St. Charles DOC officer, subjected Plaintiff to, or caused Plaintiff to be subjected to, the

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

deprivation of his Fourth Amendment right under the United States Constitution to be free from unreasonable seizures of his person and the use of excessive force.

135.    Upon information and belief, Defendant was deliberately acting in accordance with a St. Charles DOC pattern, practice, or custom of using excessive force during the detention of individuals, including the violations of the Policies and permitting the Failures in connection with the use of pepper spray.

136.    As a direct and proximate result of the violations of the Policies and the Failures, Plaintiff suffered numerous serious injuries as described herein, including, but not limited to, loss of his left eye, fear for his life, depression, anxiety, and substantial pain and suffering – physically, mentally, and emotionally.

137.    The cost of Plaintiff's medical care, after factoring in unknown future medical care, will be an amount that cannot be pled with greater specificity.

138.    To the extent that Plaintiff prevails in the instant case, he is entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against Defendant in amount that is fair and reasonable, for costs, for attorney fees, and for such other legal or equitable relief the Court deems appropriate.

### COUNT 2:
### Violation of Plaintiff's Eighth and Fourteenth Amendment Rights
### Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 2 against Defendant:

139.    All preceding paragraphs are re-alleged and incorporated herein.

140.    Acute untreated psychosis is a serious medical condition, and Defendant was deliberately indifferent when he failed to provide any medical care to Plaintiff for this problem.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

141.    Defendant was deliberately indifferent because he knew or should have known the seriousness of Plaintiff's condition, and he failed to obtain emergent psychiatric consultation when his condition deteriorated.

142.    Reiter's disease is a serious medical condition, and Defendant was deliberately indifferent when he failed to provide Plaintiff's current medications for his condition as well as take appropriate precautions to prevent injuries to his eyes.

143.    Defendant was deliberately indifferent because he knew or should have known of Plaintiff's diagnosis of reactive arthritis (also known as Reiter's syndrome or Reiter's disease) and failed to continue his prescribed medications for this condition on his arrival to the facility.

144.    Defendant was deliberately indifferent when he failed to contact the shift supervisor to check with Medical about Plaintiff's health history prior to initiating a planned, routine cell search in which the use of pepper spray was being considered, in violation of St. Charles DOC policy.

145.    Defendant was deliberately indifferent when he allowed Plaintiff to be pepper sprayed at a distance of approximately one foot, in violation of the SABRE O.C. Training Manual as well as the St. Charles DOC policy on the use of O.C. Spray.

146.    Defendant was deliberately indifferent when he failed to provide appropriate aftercare when he sprayed Plaintiff with pepper spray despite being the suicide prevention officer on duty immediately after the spraying.

147.    Defendant was deliberately indifferent when he failed to continuously monitor Plaintiff after he was pepper sprayed and intervene immediately to prevent him from gouging his left eye.

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

148.     Furthermore, Defendant was negligent in that he (a) failed to manage Plaintiff's psychiatric emergency in accordance with the standards of the medical profession and (b) failed to provide Plaintiff with timely access to his critically important medications for his reactive arthritis and active uveitis, in accordance with the standards of the medical profession.

149.     Accordingly, under the color of state law as local entities authorized and required to provide medical care to inmates and detainees in the custody of the St. Charles DOC, Defendant subjected Plaintiff to, or caused Plaintiff to be subjected to, a deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights for inadequate prison care and Fourteenth Amendment rights to due process of law and to be free of punishment prior to adjudication of guilt.

150.     As a direct and proximate result of Defendant's deliberate indifference to Plaintiff's serious medical needs, Plaintiff suffered numerous serious injuries as described herein, including, but not limited, to loss of his left eye, fear for his life, depression, anxiety, and substantial pain and suffering – physically, mentally, and emotionally.

151.     The cost of Plaintiff's medical care, after factoring in unknown future medical care, will be an amount that cannot be pled with greater specificity.

152.     To the extent that Plaintiff prevails in the instant case, he is entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against Defendant in amount that is fair and reasonable, for costs, for attorney fees, and for such other legal or equitable relief the Court deems appropriate.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Electronically Filed - St Charles Circuit Div - July 18, 2022 - 02:00 PM

Date: July 18, 2022

**DONNER APPLEWHITE,<br>ATTORNEYS AT LAW**

By:  /s/ Thomas R. Applewhite
<br>      Thomas R. Applewhite, #64437MO
<br>      Steven A. Donner, #63789MO
<br>      906 Olive Street, Suite 1110
<br>      St. Louis, Missouri 63101
<br>      Phone:   (314) 293-3526
<br>      Fax:      (888) 785-4461
<br>      Email:   tom.applewhite@da-lawfirm.com
<br>               steve.donner@da-lawfirm.com

*Co-Counsel for Plaintiff*

Respectfully submitted by,

**BURGER LAW, LLC**

By:  /s/ Gary K. Burger
<br>      Gary K. Burger, #32460MO
<br>      500 N. Broadway, Suite 1860
<br>      St. Louis, Missouri 63102
<br>      Phone:   (314) 542-2222
<br>      Fax:      (314) 542-2229
<br>      Email:   gary@burgerlaw.com

*Co-Counsel for Plaintiff*



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number:  2211-CC00662 |
| Plaintiff/Petitioner:<br>JAMIE LEONARD | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS RICHARD APPLEWHITE<br>906 OLIVE STREET<br>STE 1110<br>ST LOUIS, MO  63101 |
| vs. | |
| Defendant/Respondent:<br>KRISTIAN SCOTT | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **KRISTIAN SCOTT**
**Alias:**

**5900 FAIRGLEN AVE APT 724**
**FORT WORTH, TX  76137**

*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*ST. CHARLES COUNTY*

<table>
<tr><td>7/19/2022</td><td>/S/  Cheryl Crowder</td></tr>
<tr><td>Date</td><td>Clerk</td></tr>
</table>

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                         Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
                                                Date                                              Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number: 2211-CC00662 |
|---|---|
| Plaintiff/Petitioner:<br>JAMIE LEONARD<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS RICHARD APPLEWHITE<br>906 OLIVE STREET<br>STE 1110<br>ST LOUIS, MO  63101 |
| Defendant/Respondent:<br>KRISTIAN SCOTT | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

### Summons in Civil Case

The State of Missouri to: **KRISTIAN SCOTT**
Alias:

5900 FAIRGLEN AVE APT 724
FORT WORTH, TX  76137

**COURT SEAL OF**

**ST. CHARLES COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 7/19/2022 | /S/  Cheryl Crowder |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)
☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with
_____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
                                          Date                          Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $____10.00____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.